Louisiana State Rice Milling Co., Plaintiff and Appellant, *v.* Successors of Armstrong Brothers, Defendants and Appellees.

No. 3223. Argued December 5, 1924.—Decided March 26, 1925.

1. Purchase and Sale—Commercial Contract—Grades of Merchandise—Arbitration and Award.—A contract for the purchase and sale of ''low grade rice with not more than thirty per cent of screenings'' is not performed when the seller delivers ''medium grade'' rice and it is shown that the grades are different.

District Court of Ponce, R. Díaz Cintrón, J. Judgment for the defendants in an action on a commercial contract. *Affirmed.*

*O. B. Frazer, Nelson Gammans* and *R. Castro Fernández* for the appellant. *Arturo Ortiz Toro, R. Dapena* and *M. Tous Soto* for the appellees.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The plaintiff, a corporation organized under the laws of Louisiana, entered into a contract for the sale of rice with the defendants, a mercantile partnership of Ponce, Porto Rico. Certain disagreements arose in connection with the matter. They were submitted to the Insular Chamber of Commerce and that organization made an award which did not satisfy either of the parties, whereupon the Board of Trade of New Orleans, Louisiana, intervened and the material question involved in this action is the interpretation of

the decision of the said board. Each party claims to be sustained by that decision.

[1] The contract reads as follows:

"CONTRACT OF SALE FOR PORTO RICO.

"No. 00007 PR.

"Approved by the
"Rice Millers Association.
"Effective August 1, 1917.

---

"LOUISIANA STATE RICE MILLING CO., INC.

"Hereby sells and agrees to deliver, and Successors of Armstrong Brothers, the undersigned buyers, buy and agree to pay for the following merchandise:

| Space for seller's memorandum | No. of 100 lb. pockets | No. of samples | Price CIF, Including bags | Grades, variety, marks, etc. |
|---|---|---|---|---|
| | 1,000 | Rosy Low Grade Rice with not more than 30% mixture of screening. | At best price possible on date ordered out from mill. | Not later than Nov. 30, 1920. |
| | 300 | Choice Blue Rose. | | |

"This agreement is made in accordance with the preceding terms and conditions and those printed on the back hereof, with which the parties are familiar.

"This written agreement is the complete contract of the parties hereto and imposes no obligation on the seller until accepted and confirmed in writing or by cablegram.

"Louisiana State Rice Milling Co., Inc.,
"Stebbins & Co., Inc., Agents,
"By J. González Torres, Salesman.
"Successors of Armstrong Brothers,
"By _____
"Buyer.

"Confirmed by cable.
"Date: October 7, 1920."

The plaintiff shipped to the defendants several lots of rice and the defendants refused to receive them, claiming that the rice was not of the class specified in the contract.

Both parties then agreed that the rice should be sold at public auction and to submit the controversy to the arbitration of the Insular Chamber of Commerce, San Juan Branch, with a right to appeal to the New Orleans Board of Trade, binding themselves to accept the award of the board as final and the defendants agreeing to pay the difference, if any, between the invoice price and the price obtained at auction.

In exercising the right of appeal the case was submitted to the board by means of the following letter:

"Ponce Playa, P. R., July 29, 1921.

"The New Orleans Board of Trade,
          "New Orleans, La.
"Gentlemen:
    "Referring to the case in arbitration, Louisiana State Milling Co. vs. Sucers. of Armstrong Brothers, I beg to state that the matters to decide are:
    "1. Is the rice, in regard to quality specified in the contract, the same as the type shipped by the Louisiana State Rice Milling Co.?
    "2. Was the price at which the shipment was invoiced, the market price the day the shipment was made?
    "In the assurance of your kind attention to this matter, we are,

Your very truly,

          "Sucers. of Armstrong Brothers,
          "Stebbins & Co., Inc.,
                    "J. González Torres, Secretary."

And the final award of the board, in so far as pertinent, was as follows:

" * * * the Clean Rice Arbitration Committee in session this day have carefully examined the following described samples, predicating their conclusions upon the information contained in the letter of the Louisiana State Rice Milling Company of date August the 9th, 1921, and unanimously rendered decision as follows:

"Sample marked 'AJ'_____ 402 pockets.

"Classifies 'Medium Blue Rose—Coated'—Contains 25% of broken rice, and valued October first, 1920, at five and one-half cents (5½ c.) per pound F. O. B. mill in single pockets.

"Sample marked 'AT'_____ 321 pockets.

"Classifies 'Choice Blue Rose—Uncoated'—Contains 12% of broken rice, and valued October first, 1290, at five and one-half cents (7½ c.) per pound F. O. B. mill in single pockets.

"Sample marked 'AK'_____ 450 pockets.

"Classifies 'Medium Blue Rose—Uncoated'—Contains 24% of broken rice, and valued October second, 1920, at five and one-half cents (5½ c.) per pound F. O. B. mill in single pockets.

"Sample marked 'AL'_____ 170 pockets.

"Classifies 'Medium Early Prolific (Blue Rose Variety)—Coated,' contains 30% of broken rice, and valued October second, 1920, at five and one-half cents (5½ c.) per pound F. O.B. mill in single pockets."

Thereupon this action was brought, because in fact the final award of the board, which could have been so simple and precise, was rendered in such a form as apparently to sustain the contentions of both parties, as they allege. After hearing the evidence the district court rendered judgment in favor of the defendants and the plaintiff took the present appeal, assigning in its brief the following errors:

"1. The district court erred in not holding that the decision of the New Orleans Board of Trade was favorable to the plaintiff.

"2. The district court erred in admitting evidence as regards the grade of rice purchased and the grade of rice delivered.

"3. The district court erred in not sustaining the complaint."

In our opinion the second assignment is without merit, and the third is involved in the first. The whole controversy turns on the first assignment. Does the final decision of the board show that the rice shipped by the plaintiff to the defendants is of the kind specified in the contract? Let us see.

The authenticity of the documentary evidence to which we have referred is admitted by both parties.

At the trial the plaintiff introduced in evidence, over the objection of the defendants, the deposition of H. S. Herring, Secretary-treasurer of the New Orleans Board of Trade, and of Joe Bloom, a dealer in rice. The deposition of the former relates only to matters of procedure. That of the latter goes to the merits of the controversy. The deponent says that in August and September of 1921 he was a member of the Clean Rice Arbitration Committee; that he has been in the rice business for thirty years, and that the said committee rendered a decision in the case under consideration. He was asked: "Does the description of the sample marked 'AJ', i. e., 'Medium Blue Rose coated contains 25 per cent of broken rice,' as used in the decision of the said New Orleans Board of Trade, Ltd., come within the description 'rosy low-grade rice with not more than 30 per cent mixture of screenings'?" He answered: "Yes, sir." He gave the same answer to similar questions as to the other lots mentioned in the decision.

Then the plaintiff offered the testimony of L. G. Laland. He testified that about September and October of 1920 the difference in price between rice F. O. B. mill in Louisiana and rice delivered in Ponce was one dollar the hundredweight. When the plaintiff called as a witness Isidoro Delgado, the auctioneer, the defendants admitted that the rice had been sold by public auction for the price specified in the complaint. Thereupon the plaintiff rested.

The evidence for the defendants consisted of the testimony of Arturo Bravo, Pedro L. Armstrong, Rafael Collazo, Oscar Martínez, Francisco Amundarai and of various documents and a pamphlet.

The testimony of Bravo, Secretary of the Chamber of Commerce, like the deposition of Herring, refers to the procedure followed and about which there is no dispute.

Armstrong, a member of the defendant firm, testified, over the plaintiff's objection, that the plaintiff "sent three lots, of which one was Medium Blue Rose polished, another Medium Blue Rose unpolished, and another Early Prolific, whether polished or not I do not remember," and that because of that classification made by him when the rice arrived he refused to receive it.   Referring to the decision, he said that "Medium Blue Rose is a grade within the different classes of rice" and "Blue Rose is a class of rice;" that Medium Early Prolific means "rice of an intermediate class."   He concluded by saying that there is a difference in quality between Medium Blue Rose and Rose Low Grade rice, because "Medium Blue Rose is a good class of rice, next best to Choice, while Low Grade is the lowest class of rice."   The witness said that the prices of these two classes are different.   Then he testified at length about the rules for the classification of rice in New Orleans.   After a long cross-examination by the plaintiff, which is difficult to summarize, he maintained that "there may be rosy rice in the medium class and rosy rice in the low class."   The testimony of Collazo and Martínez, merchants of Ponce, and of Amundarai, a rice broker, was more or less to the same effect.

From the rules for the inspection of rice of the New Orleans Board of Trade, Ltd., to which the witnesses referred and which were offered in evidence, the following is transcribed:

"*Classifications, grades and specifications of Rice for inspection by the Clean Rice Arbitration and Inspection Committee of the New Orleans Board of Trade, Limited.*

"CLASSIFICATIONS:—Honduras.   Carolina.   Blue Rose.   Louisiana Pearl.   Early Prolific.   Japan.

"GRADES:—I. Extreme Fancy.   II. Fancy.   III. Choice.   IV. Medium.   V. Low.

"SPECIFICATIONS:—*   *   *

"IV.—*Medium.*

"*Separation.*—Fairly well screened with all very fine screenings removed.

"*Color.*—Any color except deep red, badly stackburned or badly mud-stained.

"*Style.*—Ordinarily milled and finished; liberal amount of either stack burn or of stained, specked or red grains; liberal, but not excessive, amount of chalk.

"*Cleanliness.*—Liberal amount of paddy, foreign matter, seeds or straw, but not excessive unless sufficiently offset by superior style, color, or grain.

"V.—*Low.*

"Any rice grading below the specifications above, in separation, style, color, and cleanliness of *Medium, screenings* and *second heads* are excepted from any of the five grades enumerated above."

In rebuttal the plaintiff introduced the testimony of Stebbins and Laland. The former said that he had twenty-five years' experience in the business and that rosy rice with less than 30 per cent of screenings would be classed as "ordinary rice" or "rice of common class;" that he would classify as low grade a rosy medium Blue Rose rice with 24 per cent of screenings, and that there were about fifty classes of low grade rice. On cross-examination by the defendants he said that he was a member of Stebbins & Co., the representatives of the Louisiana State Rice Milling Co. when the rice in controversy was sold. Witness Laland testified as follows:

"Q.—Do you know what is the maximum percentage of screenings in medium grade rice? A.—It must have not more than 30%. Q.—If it has more than 30%, what grade of rice is it? A.—Low grade. Q.—If the rice is rosy Blue Rose with less than 30% of screenings, what is its grade according to the New Orleans Board of Trade? A.—It depends upon the amount of screenings, that is, slightly rosy rice which has not more than 20% of screenings is choice, but if it is rosy and has 30% of screenings, it is medium. Q.—What is low grade? A.—When it is rosy with more than 30% of screenings it is low grade. Q.—Suppose it is rosy with not more than 30% of screenings, can it be low grade? A.—No, sir. Q.— What may be the color of low grade rice according to the New Orleans Board of Trade? A.—It must be either very red, deep red

or very specked.  Q.—What are the high grades of rice?  A.—The fancy, extra fancy and choice.  Q.—What are the low grades?  A.—Medium and low grade.  Q.—Do you know what is meant in the trade in Porto Rico by the word 'ordinary' as applied to rice?  A.—As I understand it, it means cheap, low class rice.  Q.—Do you mean to say that ordinary rice is low class rice?  A.—Yes.  Q.—If you have rosy medium rice with 24% or 25% of screenings, do you consider it of high or low class?  A.—Of low class.  Q.—Why is it low class?  A.—It is low class because nobody can say that rosy rice with 25% of screenings is high grade.''

This witness also identified a pamphlet of the Department of Agriculture of the United States which was offered in evidence.

The appellant in its brief says, among other things, that—

''The defendants base their whole case on the fact that the rice delivered was classified as 'Medium' and allege that according to the contract we were bound to deliver rice of the lowest grade, technically classified as 'Low' in the New Orleans pamphlet and as 'Sample Grade' by the Department of Agriculture.  They attempt to give the words 'low-grade rice' a technical and strict definition.  We contend that these words were used in the contract to describe the rice as low-grade rice but that it was not the intention to require the shipment of rice of a lower class than medium.  According to the award the rice delivered was of the technical grade 'Medium' and was rosy with from 24% to 30% of screenings.  Witness Bloom and the other witnesses of the plaintiff testified that rice of this class is low-grade rice and, therefore, of the quality contemplated in the contract.

''The court should thus interpret the words 'low-grade rice' for two reasons: In the first place, when a contract contains two inconsistent provisions, one general and the other special, the special provision should prevail; and in the second place, a contract should not be interpreted in such a manner as would make its performance impossible when there is another interpretation that would render performance possible.''

Although it must be admitted that the inclusion in the contract of the condition ''with not more than 30 per cent mixture of screenings'' causes some confusion, it can not

be denied that the other condition providing for "low grade" rice is predominant and that the decision of the New Orleans Board of Trade classified the rice delivered as Medium, and that it was shown that Medium and Low are different grades. Such being the case, it can not be concluded that the district court erred in weighing the evidence in the sense that the plaintiff did not show that it had delivered to the defendants rice of the class sold.

And if the quality of the rice delivered was not that specified in the contract, the buyer was justified in refusing to receive it. Article 327 of the Code of Commerce provides as follows: "If the sale takes place by samples or by a fixed quality known in commerce, the purchaser can not refuse to receive the articles contracted for, if they conform to the samples or quality mentioned in the contract." And if he is bound to receive them in such a case by mandate of the law, it is clear that he is not so bound when the condition is not complied with.

By virtue of all of the foregoing the judgment appealed from must be affirmed.